UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CATHRYN KEYS, | Case No. 25-CV-1966 (PJS/ECW) |
| Plaintiff, | |
| v. | ORDER |
| MEDTRONIC, INC. and UNITED STATES FOOD AND DRUG ADMINISTRATION, | |
| Defendants. | |
| DILLY ANDERSON, | Case No. 25-CV-1967 (PJS/ECW) |
| Plaintiff, | |
| v. | ORDER |
| MEDTRONIC, INC. and UNITED STATES FOOD AND DRUG ADMINISTRATION, | |
| Defendants. | |
| DOYLE HAYES, | Case No. 25-CV-2125 (PJS/ECW) |
| Plaintiff, | |
| v. | ORDER |
| MEDTRONIC, INC. and UNITED STATES FOOD AND DRUG ADMINISTRATION, | |
| Defendants. | |

| | |
|---|---|
| THERESA GOODMAN, | Case No. 25-CV-2304 (PJS/ECW) |
| Plaintiff, | |
| v. | ORDER |
| MEDTRONIC, INC. and UNITED STATES FOOD AND DRUG ADMINISTRATION, | |
| Defendants. | |

Richard J. Hood, THE WILHITE LAW FIRM, for plaintiffs.

Sara Kristine Thompson, Laura Rose Hammargren, Lori G. Cohen, and Victoria D. Lockard, GREENBERG TRAURIG, LLP; Jeffrey S. Bucholtz, KING & SPALDING LLP, for defendant Medtronic, Inc.

Lucas B. Draisey, UNITED STATES ATTORNEY'S OFFICE; Michael B. Stuart, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; Sean R. Keveney, Wendy Vincente, and Kwabena Akowuah, U.S. FOOD AND DRUG ADMINISTRATION, for defendant United States Food and Drug Administration.

Plaintiffs Cathryn Keys, Dilly Anderson, Doyle Hayes, and Theresa Goodman were all implanted with a spinal-cord stimulator manufactured by defendant Medtronic, Inc. ("Medtronic").  Plaintiffs bring these actions asserting product-liability and related claims against Medtronic.  Plaintiffs also bring claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., against defendant United States Food and Drug Administration ("FDA"), seeking a declaration that plaintiffs' spinal-cord stimulators did not go through the proper regulatory approval process and

-2-

that, as a result, the Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act do not preempt plaintiffs' claims against Medtronic.

This matter is before the Court on defendants' motions to dismiss. For the reasons that follow, the Court grants the motions with respect to Keys's, Anderson's, and Goodman's complaints, and those cases are dismissed in their entirety. The Court also grants defendants' motions to dismiss Hayes's APA claim against the FDA. Finally, the Court grants Medtronic's motion to dismiss Hayes's remaining claims, save for Hayes's parallel manufacturing-defect claims insofar as they relate to the spinal-cord stimulator that Hayes had implanted in March 2024.

## I.  BACKGROUND

### A.  Class III Medical Devices and Premarket Approval

Medtronic's spinal-cord stimulators are Class III medical devices. Compl. ¶ 24.[1] Class III devices are devices "for a use in supporting or sustaining human life"; "for a use which is of substantial importance in preventing impairment of human health"; or that "present[] a potential unreasonable risk of illness or injury." 21 U.S.C. § 360c(a)(1)(C). Class III devices receive more extensive federal oversight than any other class of medical devices and are subject to a comprehensive and rigorous process known as "premarket approval" ("PMA"). *See* 21 U.S.C. § 360e; *Riegel v. Medtronic, Inc.*,

---

[1]Unless otherwise indicated, citations are to documents filed in *Keys*.

552 U.S. 312, 317–20 (2008) (describing the PMA process).  During the PMA process, manufacturers must provide the FDA with, among other things,

> full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a "full statement" of the device's "components, ingredients, and properties and of the principle or principles of operation"; "a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device"; samples or device components required by the FDA; and a specimen of the proposed labeling.  § 360e(c)(1).  Before deciding whether to approve the application, the agency may refer it to a panel of outside experts, 21 CFR § 814.44(a) (2007), and may request additional data from the manufacturer, § 360e(c)(1)(G).

*Riegel*, 552 U.S. at 318.

The FDA grants PMA only if the agency has received "reasonable assurance" that the device is safe and effective under the conditions of use included on the label and determined that the proposed labeling is not false or misleading.  21 U.S.C. § 360e(d)(1).  Once a device receives PMA, a manufacturer cannot make "changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness" unless it submits an application for supplemental PMA, which is "evaluated under largely the same criteria as an initial application." *Riegel*, 552 U.S. at 319; *see* 21 U.S.C. § 360e(d)(5)(A)(i).[2]

---

[2] There are certain exceptions that are not relevant here.

### B. Plaintiffs' Implantations

Spinal-cord stimulation "is a neuromodulation therapy used to manage chronic, intractable pain of the trunk and/or limbs."  Compl. ¶ 16.  Medtronic was the first company to obtain PMA for a fully implantable spinal-cord stimulation system.  Compl. ¶ 16.  In 1984, the FDA approved PMA P840001 for Medtronic's Itrel II spinal-cord stimulator.  Compl. ¶ 16.

Between 1984 and 2018, Medtronic obtained FDA approval for changes to its spinal-cord stimulator through over 400 PMA supplements.  Compl. ¶ 160.  Between 2017 and 2019, the FDA approved supplements that introduced material changes to the stimulator's battery chemistry, firmware algorithms, charging interface, stimulation waveform modulation, labeling, and implantation tools.  Compl. ¶ 36.  These changes affected the stimulator's energy source, operational interface, stimulation pattern, safety profile, and surgical complexity, and also introduced a user interface that relies on proprietary wireless telemetry and firmware-dependent control systems not present in the original device.  Compl. ¶ 37.  Plaintiffs allege that, collectively, these modifications transformed the stimulator into a materially different device from the stimulator originally approved in 1984.  Compl. ¶ 37.

All four plaintiffs were implanted with the Medtronic Intellis SCS System Model No. 97715, which was launched in June 2017.  *Keys*, 25-CV-1966, Compl. ¶¶ 17, 21(j);

*Anderson*, 25-CV-1967, Compl. ¶¶ 17, 21(j); *Hayes*, 25-CV-2125, Am. Compl. ¶¶ 17, 21(j); *Goodman*, 25-CV-2304, Compl. ¶¶ 17, 21.  Between 2017 and 2022, Medtronic disclosed to the FDA more than 2,700 adverse events associated with the Intellis Model 97715, including recurring patterns of high-frequency charging failure, unintentional shocks, and stimulator migration.  Compl. ¶ 19.  These reports were publicly available through the FDA's Manufacturer and User Facility Device Experience database.  Compl. ¶ 19.

Plaintiff Cathryn Keys, who resides in Tennessee, was implanted with the stimulator in May 2019.  Compl. ¶¶ 1, 17, 46.  During the surgery, a Medtronic field representative was present and provided support.  *Id.* ¶ 46.  In the months following implantation, Keys began experiencing electric shocks, worsening low-back and extremity pain, and reduced efficacy of the system.  *Id.* ¶ 48.  Within a year of receiving the implant, Keys developed urinary incontinence.  *Id.*  By mid-2019, Keys was advised to turn off the system.  *Id.* ¶ 53.  The device remains implanted and, despite being inactive, continues to cause pain and interfere with adjacent anatomical structures.  *Id.* ¶¶ 49, 53.

Plaintiff Dilly Anderson, who resides in Kentucky, was implanted with the stimulator in May 2018.  *Anderson*, 25-CV-1967, Compl. ¶¶ 1, 17, 45–46.  During the surgery, a Medtronic field representative was present and provided support.  *Id.* ¶ 46.  In the months following implantation, Anderson began experiencing complications,

including electric shocks, worsening low-back and extremity pain, and reduced efficacy of the system. *Id.* ¶ 48. By May 2019, Anderson developed urinary incontinence. *Id.* ¶ 48. Shortly afterwards, in mid-2019, Anderson was advised to turn off the system. *Id.* ¶ 53. The stimulator remains implanted, however, and Anderson continues to experience persistent pain, a diminished quality of life, and a lack of therapeutic benefit. *Id.* ¶ 49.

Plaintiff Doyle Hayes, a resident of Tennessee, was implanted with two stimulators—the first in November 2019 for back and leg pain, and the second in March 2024 for neuralgia. *Hayes*, 26-CV-2125, Am. Compl. ¶¶ 1, 17, 48, 51. During both surgeries, Medtronic field representatives were present and involved in the procedures. *Id.* ¶¶ 48, 51. Within two weeks of the first implantation, Hayes experienced severe complications, including electric shocks, burning pain, and progressive loss of function in his right leg. *Id.* ¶ 50. Imaging confirmed migration of the lead wire, and Hayes's condition worsened in the following months. *Id.* ¶ 50. By mid-2019, Hayes was advised to turn off the device entirely. *Id.* ¶ 58. The second implantation provided no relief for Hayes's neuralgia; instead, Hayes developed new symptoms. *Id.* ¶ 51. Over time, both devices have contributed to a decline in Hayes's quality of life, causing pain, urinary dysfunction, gait instability, localized discomfort, electrical misfiring, and pressure pain, while providing no meaningful therapeutic effect. *Id.* ¶¶ 52, 57.

Plaintiff Theresa Goodman, a resident of Tennessee, was implanted with the stimulator in February 2020 to treat chronic back and leg pain. *Goodman*, 25-CV-2304, Compl. ¶¶ 1, 48–49. Within two weeks of implantation, Goodman experienced shock-like sensations, worsening pain, and urinary incontinence. *Id.* ¶¶ 24, 51. These conditions were not present before implantation. *Id.* ¶ 51.

## II. ANALYSIS

### A. Standard of Review

Both the FDA and Medtronic move to dismiss plaintiffs' APA claims under Fed. R. Civ. P. 12(b)(1) for lack of standing and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Medtronic also moves to dismiss plaintiffs' claims against it under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Both the FDA and Medtronic bring a "facial" challenge to the Court's subject-matter jurisdiction over the APA claims. In a facial challenge, the court "restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Perez v. Does 1–10*, 931 F.3d 641,

646 (8th Cir. 2019). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

### B. Claims against the FDA

Plaintiffs challenge the FDA's approval of post-2017 PMA supplements, contending that allowing Medtronic to significantly alter the spinal-cord stimulators through the PMA supplement process—rather than insisting on a whole new PMA application—was arbitrary, capricious, contrary to law, and in excess of statutory authority. Compl. ¶ 162; 5 U.S.C. §§ 702, 706(2).

### 1. Standing

Defendants contend that plaintiffs lack standing to bring their APA claims. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing consists of three elements: "[(1)] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (cleaned up).

The plaintiff bears the burden of establishing standing and must clearly allege facts demonstrating each element. *Id.* at 338; *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014). Further, standing must exist at the outset of the litigation. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [the plaintiffs] had Article III standing at the outset of the litigation."); *L.H. v. Indep. Sch. Dist.,* 111 F.4th 886, 892 (8th Cir. 2024) ("Standing is assessed at the time the action commences." (cleaned up)).

In their complaints, plaintiffs allege that the FDA's actions directly and adversely affected both their legal rights and their physical health. Compl. ¶ 44. They further allege that changes to the device approved through PMA supplements contributed to their injuries. Compl ¶ 51. In their briefing, however, plaintiffs disclaim any theory that FDA approval caused their physical injuries. ECF No. 78 at 14 ("Plaintiffs do not allege that the FDA physically caused their injuries.").[3] Instead, they limit their theory of standing to one type of injury—namely, what they characterize as the "concrete legal injury" of Medtronic being able to invoke a preemption defense based on the stimulator's status as a Class III medical device that came to market through the PMA process. *Id.*

---

[3]When citing documents by ECF number, the Court cites to the electronically generated page numbers at the top of the page.

Defendants deny that this is a cognizable injury for purposes of standing. Defendants are likely correct, but the Court need not decide the matter.  Even if this is a cognizable injury, plaintiffs nevertheless lack standing because they did not incur this injury until *after* they filed their lawsuits.  Plaintiffs contend that they incurred this injury and their APA claims accrued when Medtronic invoked a preemption defense in responding to the complaints that plaintiffs filed in these actions.  *Id.* at 31–32.  As noted, however, standing must exist at the outset of the litigation.  Because Medtronic did not invoke preemption until it filed its motions to dismiss—that is, until *after* plaintiffs filed their complaints—plaintiffs did not have standing to bring their APA claims when they filed those complaints.  The Court therefore lacks jurisdiction over plaintiffs' APA claims.

## 2. Merits

Even if plaintiffs had standing to challenge the use of PMA supplements to approve various iterations of the Intellis device, the Court would dismiss their APA claims on the merits.  Plaintiffs insist that the FDA lacked statutory authority to approve changes to the Intellis device pursuant to PMA supplements and repeatedly emphasize that, in approving Medtronic's PMA supplements, the FDA acted outside the bounds of its congressionally granted authority.  Conspicuously absent from plaintiffs' arguments, however, is a citation to *any* statutory or regulatory language that would forbid the use

of PMA supplements—or require a new PMA—to make the kinds of changes Medtronic has made to its spinal-cord stimulator.  Indeed, plaintiffs do not cite any language in any statute or regulation that even describes when a new PMA—as opposed to a PMA supplement—is required.

Plaintiffs primarily rely on 21 C.F.R. § 814.39(a), contending that that provision requires a new PMA "when changes to a device, individually or cumulatively, affect the device's safety or effectiveness in a significant way."  Compl. ¶ 21; *see also id.* ¶ 162 ("The FDA's decision to allow these significant post-2017 modifications under PMA supplement review—rather than requiring a new PMA—violated its statutory duty under the FDCA and its own regulation, 21 C.F.R. § 814.39(a)."); *id.* ¶ 22 ("[N]either Medtronic nor the FDA required a new PMA, despite crossing the regulatory threshold for re-review under § 814.39(a)."); *id.* ¶ 26 (contending that, under § 814.39(a), a new PMA is required if a change to safety or effectiveness is "'significant' and not appropriately evaluated through a supplemental pathway")

Notwithstanding plaintiffs' heavy reliance on § 814.39(a), that regulation says absolutely nothing about when (or whether) a change to a device is (or could be) so significant that the FDA must insist on a new PMA rather than a PMA supplement. Instead, § 814.39(a) simply governs when an applicant must submit a PMA

supplement—not as opposed to submitting a new PMA, but as opposed to merely submitting a report to the FDA. Under § 814.39(a), an applicant

> shall submit a PMA supplement for review and approval by FDA before making a change affecting the safety or effectiveness of the device for which the applicant has an approved PMA, unless the change is of a type for which FDA, under paragraph (e) of this section, has advised that an alternate submission is permitted or is of a type which, under section 515(d)(6)(A) of the act and paragraph (f) of this section, does not require a PMA supplement under this paragraph.

The alternate submission permitted by paragraph (e) states that the FDA will identify when an applicant may submit a report to the FDA instead of a PMA supplement. Nothing in the regulation identifies any circumstance under which a new *PMA* is required.

Because plaintiffs have failed to identify any authority that would have required Medtronic to submit a new PMA instead of a PMA supplement, plaintiffs' APA challenges to the FDA's approvals of Medtronic's PMA supplements would fail on the merits even if plaintiffs had standing.

### C. Claims against Medtronic

#### 1. Statutes of Limitation

##### a. Anderson

Anderson was implanted with a spinal-cord stimulator in May 2018 and filed his lawsuit in May 2025. The parties agree that Anderson's product-liability and personal-injury claims are subject to Kentucky's one-year statute of limitations for such claims. *See* Ky. Rev. Stat. § 413.140(1)(a); ECF No. 77 at 42. Medtronic asserts, and Anderson does not dispute, that the statutes of limitations applicable to his remaining claims are four years for his warranty claims, Ky. Rev. Stat. § 355.2-725(1); five years for his misrepresentation claims, Ky. Rev. Stat. § 413.120(11); and one year for his consumer-protection claim, Ky. Rev. Stat. § 367.220(5).[4]

As discussed above, after the May 2018 implantation, Anderson began experiencing complications within months—and the complications were so severe that, by mid-2019, he was advised to turn off the system. *Anderson*, 25-CV-1967, Compl. ¶¶ 17, 45–46, 48, 53. Yet Anderson did not file his complaint until May 2025—more than five years after he was advised to turn off the device—and thus all of his claims are

---

[4]The Court reads § 367.220(5) to provide for a two-year limitations period. For purposes of Anderson's case, however, the difference is immaterial.

untimely on their face.[5] *See Rather v. Allen Cnty. War Mem'l Hosp.*, 429 S.W.2d 860, 862 (Ky. 1968) ("[T]he amended complaint, which was not filed until September 16, 1966, alleged that the injury occurred on April 6, 1965, so the fact that limitations had run did appear on the face of the complaint."); *see also Harbor Dental Assocs., LLC v. Patterson Dental Supply, Inc.*, 25-CV-0824 (PJS/SGE), 2025 WL 3063455, at *4 (D. Minn. Nov. 3, 2025) (where the face of the complaint establishes that the plaintiff's claims are time-barred, "the plaintiff bears the burden of pleading a basis for tolling the limitations period").

Anderson argues that the limitations periods should be tolled because Medtronic concealed material information about problems with the device and because Anderson was not aware of precisely how his stimulator caused his injuries.[6] This is patently insufficient under Kentucky law:

---

[5]For ease of discussion, the Court treats all of plaintiffs' claims against Medtronic as though they are subject to the discovery rule, even though it is possible (as Medtronic contends) that some of the claims would have accrued earlier. *See, e.g.*, Ky. Rev. Stat. § 355.2-725(2).

[6]Anderson also contends that Medtronic representatives misattributed the cause of his injuries. ECF No. 77 at 43. But the closest thing to such an allegation in his complaint is the statement that, despite Anderson reporting problems with the device to his treating physician and Medtronic field representatives, he "was told that the device was functioning normally." *Anderson*, 25-CV-1967, Compl. ¶ 52. Even if this vague allegation were sufficient to invoke fraudulent concealment, Anderson still should have known, by the time he was advised to turn off the device in mid-2019, that the device was a likely source of his injuries.

> In the products liability context, a potential plaintiff's awareness of an injury and of the instrumentality causing the injury is enough to trigger the limitations clock and to impose on the plaintiff the duty to discover the responsible parties.

*Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 64 (Ky. 2010) (cleaned up).  Indeed, *Fluke* rejected the argument that the defendant manufacturer's alleged failure to disclose problems with its product to regulatory authorities could equitably toll the statute of limitations "where it is apparent from the facts that the product may have been a potential cause of an injury."  *Id.*

*Fluke* also makes clear that a plaintiff need not possess all material information about his claim before the limitations period begins to run; instead, the plaintiff need know only that the product "*may* have been a potential cause of injury."  *Id.* (emphasis added); *see also id.* ("Any fact that should excite [the plaintiff's] suspicion is the same as actual knowledge of this entire claim." (quoting *Hazel v. Gen. Motors Corp.*, 863 F. Supp. 435, 440 (W.D. Ky. 1994)).  All of Anderson's claims against Medtronic are therefore barred by the applicable statutes of limitations.

### b.  *Keys, Hayes, and Goodman*

Keys was implanted with a spinal-cord stimulator in May 2019, Hayes in November 2019 and again in March 2024, and Goodman in February 2020.  Keys and Hayes filed their lawsuits in May 2025, and Goodman filed hers the following month.

The parties agree that the product-liability and personal-injury claims of these three plaintiffs are subject to a one-year statute of limitations under Tennessee law. Tenn. Code § 28-3-104(a)(1)(A); ECF No. 77 at 44. Medtronic asserts, and these plaintiffs do not dispute, that their warranty claims are subject to a four-year limitations period, Tenn. Code § 47-2-725(1), and their misrepresentation claims[7] are subject to a three-year limitations period, Tenn. Code. § 28-3-105.[8]

Under Tennessee's discovery rule, the statute of limitations begins to run when the plaintiff discovers or reasonably should have discovered both (1) that she has been injured and (2) the source of her injury. *See Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 458 (Tenn. 2012); *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974). At that point, the limitations period begins to run, even if the plaintiff does not know the full extent of her damages or the specific type of legal claim that she may have. *See Redwing*, 363 S.W.3d at 459. "The discovery rule is not intended to permit a

---

[7]Medtronic does not argue that these plaintiffs' consumer-protection claims are time-barred.

[8]It is not clear to the Court that Tenn. Code § 28-3-105, which mainly applies to injuries to property, governs these plaintiffs' misrepresentation claims. Instead, it appears likely that, because all of their claims against Medtronic seek to recover for personal injuries, they are all subject to a one-year limitations period under Tenn. Code § 28-3-104. *See Jones v. Invasix Inc.*, No. 3:19-CV-0860, 2021 WL 325925, at *11–12 (M.D. Tenn. Feb. 1, 2021). As no party has made this argument, however, and as the three-year period is more favorable to plaintiffs, the Court will assume that the applicable period is three years.

plaintiff to delay filing suit until the discovery of all the facts that affect the merits of his or her claim." *Id.* Instead, the limitations period begins running when "a plaintiff gains information sufficient to alert a reasonable person of the need to investigate the injury." *Id.* (cleaned up).

Tennessee recognizes the doctrine of fraudulent concealment, under which the limitations period is tolled "when the defendant has taken steps to prevent the plaintiff from discovering he or she was injured." *Id.* at 462 (cleaned up). As a practical matter, however, the fraudulent-concealment inquiry replicates the discovery rule. *Id.* ("As it currently exists in Tennessee, the doctrine of fraudulent concealment is aligned with the discovery rule."). "For the purposes of both the discovery rule and the doctrine of fraudulent concealment, the pivotal issue is whether [the plaintiff] would have discovered [the defendant's] allegedly wrongful acts had he exercised reasonable care and diligence." *Id.* at 466; *see also id.* at 463 ("The statute of limitations is tolled until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment *or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim.*" (emphasis added)).

Applying these principles to this case, the Court finds that Keys's and Goodman's product-liability, personal-injury, warranty, and misrepresentation claims are clearly time-barred. Likewise, Hayes's product-liability, personal-injury, warranty,

and misrepresentation claims are also clearly time-barred as they relate to the stimulator that Hayes had implanted in November 2019.

Both Keys and Hayes were advised to turn off their devices by mid-2019. The reason why they were advised to turn off their devices was because they had experienced pain and other serious complications soon after those devices had been implanted. This was more than enough to put them on notice that the devices that they were advised to turn off might be responsible for the injuries that occurred soon after those devices were implanted.

Goodman was apparently never advised to turn off her device, but she experienced dramatic new symptoms—including shock-like pain and urinary incontinence— within *two weeks* of her device being implanted. *Goodman*, 25-CV-2304, Compl. ¶ 51. These new, severe symptoms, coming on the heels of implantation, would have been enough to put a reasonably diligent plaintiff on inquiry notice. And all three plaintiffs knew, or could easily have discovered, that Medtronic manufactured their devices.

Plaintiffs argue that Medtronic concealed its knowledge of device defects and adverse-event trends. Again, though, "[t]he discovery rule is not intended to permit a plaintiff to delay filing suit until the discovery of all the facts that affect the merits of his or her claim," and a plaintiff need not know the full extent of his damages or the

-19-

specific type of legal claim he has. *Redwing*, 363 S.W.3d at 459. Moreover, plaintiffs themselves allege that Medtronic reported thousands of adverse events between 2017 and 2022. Those adverse events were publicly disclosed in the FDA's Manufacturer and User Facility Device Experience database, and those adverse events included reports of symptoms similar to plaintiffs'. Compl. ¶ 19. The Court therefore dismisses as time-barred Keys's and Goodman's product-liability, personal-injury, warranty, and misrepresentation claims (Counts I–VIII, X), as well as Hayes's product-liability, personal-injury, warranty, and misrepresentation claims (Counts I–VIII, X) insofar as they relate to his 2019 device.

As discussed above, Hayes had a second device implanted in March 2024, about 14 months before he filed his complaint. Hayes's warranty and misrepresentation claims with respect to this device are obviously not time-barred. (The parties agree that these claims are subject to limitations periods of four years and three years, respectively.) Hayes's personal-injury and product-liability claims respecting this device might be barred by the statute of limitations, but the record before the Court does not make clear when Hayes knew or should have known of his alleged injuries from the March 2024 implantation. Consequently, the Court cannot say, at this stage of the case, that the claims arising from the implementation of the second stimulator are time-barred.

-20-

The Court therefore (1) dismisses Keys's and Goodman's product-liability, personal-injury, warranty, and misrepresentation claims as time-barred; (2) dismisses Hayes's product-liability, personal-injury, warranty, and misrepresentation claims as time-barred insofar as they relate to the device implanted in 2019; and (3) declines to dismiss as time-barred Hayes's claims insofar as they relate to the device implanted in 2024. The remaining claims against Medtronic are therefore (1) Keys's and Goodman's consumer-protection (Count IX) claims; (2) Hayes's consumer-protection (Count IX) claim insofar as it relates to the 2019 device; and (3) all of Hayes's claims insofar as they relate to the 2024 device.

### 2. Preemption and Remaining Issues

The Court now examines whether Keys's, Hayes's, and Goodman's remaining claims are preempted or otherwise fail to state a claim.

The Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. § 360c et seq., to the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., "imposed a regime of detailed federal oversight" of medical devices. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008). The MDA contains a broad preemption clause that provides, in relevant part:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

For purposes of § 360k, the PMA process imposes "requirement[s] applicable under this chapter to the device." *Riegel*, 552 U.S. at 322–23. Likewise, state common-law duties, as imposed through tort claims, establish "requirement[s]" with respect to medical devices. *Id.* at 323–28.

To escape preemption, then, common-law claims—such as those plaintiffs bring in this case—must "parallel" the duties imposed under the FDCA and MDA. *Id.* at 330. At the same time, because the FDCA prohibits private plaintiffs from suing to enforce its provisions, *see* 21 U.S.C. § 337(a), claims premised on violations of the FDCA are impliedly preempted unless they "rely[] on traditional state tort law which . . . predate[s] the federal enactments." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001). In short:

> *Riegel* and *Buckman* create a narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption. The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing

> *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).

*In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010) (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009)).

### a.  Tennessee Consumer Protection Act (Count IX)

Keys, Hayes, and Goodman allege that Medtronic violated the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code § 47-18-101 et seq., by marketing the stimulator as safe, effective, and supported by clinical data, while at the same time failing to disclose cumulative post-market modifications made under PMA supplements, known adverse events, internal risk data, and the absence of new clinical trials for the post-2017 configuration.  Plaintiffs do not, however, allege that Medtronic failed to disclose anything that the PMA required it to disclose, and thus their TCPA claims are preempted under § 360k.  *See Sprint Fidelis*, 623 F.3d at 1205 (affirming dismissal of failure-to-warn claims as preempted where the plaintiffs "did not allege that Medtronic modified or failed to include FDA-approved warnings").  The Court therefore grants Medtronic's motion to dismiss these claims, which disposes of Keys's and Goodman's complaints in their entirety and leaves only Hayes's non-TCPA claims insofar as they relate to his 2024 device.

### b. *Strict Liability: Manufacturing Defect (Count I)*

If the process that Medtronic followed in manufacturing Hayes' 2024 device

complied with that device's PMA, then Hayes's claim for strict liability on the basis of

alleged manufacturing defects is clearly preempted under § 360k and *Riegel*. *See Sprint*

*Fidelis*, 623 F.3d at 1206–07 (finding manufacturing-defect claims preempted). Hayes

alleges, however, that the device "as constructed and assembled, deviated from

Medtronic's design specifications and from other units in the same product line."

*Hayes*, 25-CV-2125, Am. Compl. ¶ 71. The complaint goes on to allege that "[t]he

manufacturing defect included, but was not limited to, improper assembly, defective

battery control firmware, flawed charging telemetry integration, and defective

anchoring or lead stabilization mechanisms." *Id.* ¶ 72. This is a so-called "parallel"

claim, which is not preempted.

Medtronic argues that this claim is insufficiently pleaded under Rule 12(b)(6) and

*Twombly*. But the Eighth Circuit has cautioned district courts against dismissing

manufacturing-defect claims in medical-device cases in light of plaintiffs' limited access

to information about manufacturing requirements. *See Sprint Fidelis*, 623 F.3d

at 1206–07; *see also* 21 C.F.R. § 814.9(h)(1) (providing that data and information about

manufacturing methods and processes in a PMA file are not available for public

disclosure). Moreover, Hayes has not simply pleaded that his device was defectively

manufactured; he has specified *how* the manufacturing process was defective.  Under the circumstances, the Court concludes that Hayes's parallel claim of manufacturing defects in the 2024 device is sufficiently pleaded.

*c. Strict Liability: Failure to Warn (Count II) and Fraudulent Concealment (Count VIII)*

Hayes brings claims of failure to warn and fraudulent concealment, alleging that Medtronic failed to adequately disclose certain information about the device, including its risks, post-market performance problems, and approval through the PMA supplement process.  *Hayes*, 25-CV-2125, Am. Compl. ¶¶ 82–85, 139.  Again, though, Hayes does not allege that Medtronic failed to include any FDA-required warnings.  Accordingly, like Hayes's TCPA claim, these claims are preempted under § 360k.  *See Sprint Fidelis*, 623 F.3d at 1205.

*d.  Negligence Per Se: Federal Regulatory Violations (Count III)*

Hayes brings a claim of negligence per se based on Medtronic's alleged violations of 21 C.F.R. § 803.50, which requires manufacturers to submit adverse-event reports to the FDA; 21 C.F.R. § 820.198, which required manufacturers to maintain complaint files and process complaints for the purpose of making adverse-event reports;[9] 21 C.F.R. § 814.82(a), which permits the FDA to impose post-approval

---

[9]A final rule amending the Good Manufacturing Practices regulations recently took effect; as a result, 21 C.F.R. § 820.198 is now listed as "reserved."  FDA, *Medical Devices; Quality System Regulation Amendments*, 89 Fed. Reg. 7496 (effective Feb. 2, 2026).

requirements on a PMA device; and various provisions of the FDA's current Good Manufacturing Practices ("cGMPs").[10]

To the extent that this claim rests on the failure to submit adverse-event reports under § 803.50 or the related requirement to maintain complaint files and process complaints, this claim is impliedly preempted under *Buckman*. *See Sprint Fidelis*, 623 F.3d at 1205–06 (affirming dismissal of claims based on alleged failure to submit timely adverse-event reports as "simply an attempt by private parties to enforce the MDA, claims foreclosed by § 337(a) as construed in *Buckman*").

With respect to Hayes's allegation that Medtronic "failed to comply with post-approval conditions required under 21 C.F.R. § 814.82(a), including updated labeling and risk disclosure obligations," *Hayes*, 25-CV-2125, Am. Compl. ¶ 94(d):  Although the failure to comply with FDA-required labeling and risk-disclosure obligations could state a parallel claim, the Court agrees with Medtronic that Hayes has not plausibly pleaded such a claim.  Hayes failed to identify any language or information that was required by an FDA-imposed post-approval condition but omitted by Medtronic in its labeling.

---

[10]Hayes also alleges that Medtronic violated 21 C.F.R. § 814.39(a) by relying on PMA supplements instead of submitting a new PMA.  *Hayes*, 25-CV-2125, Am. Compl. ¶ 94(c).  The Court has already explained why this claim lacks merit.

Finally, with respect to Hayes's allegation that Medtronic violated various cGMP regulations:  As discussed below, Hayes's claim for negligent manufacturing is not preempted insofar as it alleges deviations from the manufacturing processes mandated by the PMA.  Should Hayes identify a cGMP that Medtronic violated—and develop evidence that that cGMP violation caused his injuries—the Court can determine whether the cGMP violation is admissible as evidence of negligence.  The Court therefore grants Medtronic's motion to dismiss Hayes's claim of negligence per se based on federal regulatory violations, with the exception of Hayes's allegation that Medtronic violated the cGMPs.

### e. Breach of Warranties (Counts IV and V)

Hayes alleges that Medtronic breached express warranties that the device was "safe, effective, and FDA-approved for the treatment of chronic intractable pain of the trunk and limbs"; that the device had been reviewed and approved by the FDA; that the device was the smallest implantable neurostimulator available with improved recharge time and stimulation efficiency; that the device delivered "consistent, long-term pain relief" based on robust clinical support; and that the device incorporated proprietary software and waveform technology proven to enhance patient outcomes.  *Hayes*, 25-CV-2125, Am. Compl. ¶¶ 104, 106.

To the extent that Hayes's express-warranty claim would require a jury to find that the device was not safe and effective, it is conflict preempted. *See Sprint Fidelis*, 623 F.3d at 1208 (holding that express-warranty claims were conflict preempted because, to succeed on the claims, the plaintiffs would have to "persuade a jury that Sprint Fidelis Leads were not safe and effective, a finding that would be contrary to the FDA's approval of the PMA Supplement"). For the same reason, Hayes's claim that Medtronic breached an implied warranty that the device was safe and effective is also conflict preempted. *Cf. id.*

Because Hayes fails to allege that Medtronic made any express warranties that differ from what the PMA required, the remainder of his express-warranty claim is preempted under § 360k. Even if Hayes's warranty claims were not preempted, they would fail for lack of pre-suit notice. *See* Tenn. Code § 47-2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"); *Bunn v. Navistar, Inc.*, 797 F. App'x 247, 252–55 (6th Cir. 2020) (affirming dismissal of warranty claims for lack of pre-suit notice under § 47-2-607).[11]

---

[11]*Bunn* held that the plaintiff was required to plead that he complied with the pre-suit notice requirement because the plaintiff failed to argue otherwise and even conceded on appeal that he was required to plead compliance. *Bunn*, 797 F. App'x at 252–53. Similarly, Hayes did not acknowledge, much less address, Medtronic's argument about pre-suit notice. The Court therefore finds that he has conceded that he
(continued...)

*f. Negligence (Count VI)*

Hayes next alleges that Medtronic was negligent in designing, manufacturing, testing, and labeling the device. To the extent that this claim can be interpreted to rely on Hayes's earlier allegation that the process used to *manufacture* his device failed to abide by the PMA's *manufacturing* requirements, this claim is not preempted, and Hayes may therefore pursue a claim that the 2024 device was negligently manufactured. But Hayes's allegations concerning defective design, testing, and labeling are clearly preempted under § 360k.

Hayes also alleges that Medtronic was negligent in "[e]ncouraging unlicensed field personnel to influence intraoperative decisions and postoperative care without ensuring informed consent or independent medical judgment." *Hayes*, 25-CV-2125, Am. Compl. ¶ 124(f). Again, however, Hayes does not allege that Medtronic failed to disclose anything that it was required to disclose under the PMA, and therefore this aspect of Hayes's negligence claim is also preempted under § 360k.

*g. Negligent Misrepresentation (Count VII)*

Hayes alleges that Medtronic negligently misrepresented various aspects of the device, including its safety and efficacy and its regulatory status. Hayes does not

---

[11](...continued)
must plead compliance with that requirement.

-29-

identify any representation that deviated from any FDA-required labeling, however, and therefore this claim is preempted under § 360k.

### h. Negligence Per Se: Unauthorized Practice of Medicine (Count X)

Finally, Hayes brings a claim of negligence per se, alleging that Medtronic representatives violated Tennessee's prohibition on the unauthorized practice of medicine by being present in the operating room during his 2024 implantation.

Medtronic argues that there is no private right of action for the unauthorized practice of medicine. Under Tennessee law, "[t]he burden ultimately falls on the plaintiff to establish that a private right of action exists under the statute." *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 856 (Tenn. 2010). Hayes did not respond to Medtronic's argument, and, accordingly, he has failed to meet his burden. The Court therefore grants Medtronic's motion to dismiss this claim.

### D. Leave to Amend

Plaintiffs contend that, if the Court finds their complaints deficient, the Court should grant them leave to amend. But plaintiffs did not follow this District's local rules for seeking leave to amend, nor have they identified any additional facts that could save their claims from dismissal. Plaintiffs' request for leave to amend their complaints is therefore denied. *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) ("A district court does not abuse its discretion in denying leave to amend where a

plaintiff has not followed applicable procedural rules."); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002) ("Meehan failed to specify the proposed new allegations, and the district court was not required to engage in a guessing game.").

In summary:  The Court grants defendants' motions and dismisses all claims in *Keys*, *Anderson*, and *Goodman*.  The Court mostly grants defendants' motions in *Hayes* and dismisses all claims save for Hayes's parallel manufacturing-defect claims regarding the device implanted in 2024.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. With respect to *Keys v. Medtronic*, 25-CV-1966 (PJS/ECW), *Anderson v. Medtronic*, 25-CV-1967 (PJS/ECW), and *Goodman v. Medtronic*, 25-CV-2304 (PJS/ECW):

   a. Defendants' motions to dismiss [*Keys*, ECF Nos. 30, 41, 53; *Anderson*, ECF Nos. 31, 43, 55; *Goodman*, ECF Nos. 30, 46, 58] are GRANTED.

   b. Count XI of the Keys, Anderson, and Goodman complaints [ECF No. 1 in each case], against defendant United States Food and Drug

Administration, are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

c.   The remaining counts in the Keys, Anderson, and Goodman complaints are DISMISSED WITH PREJUDICE AND ON THE MERITS.

d.   LET JUDGMENT BE ENTERED ACCORDINGLY in Case Nos. 25-CV-1966, 25-CV-1967, and 25-CV-2304.

2.   With respect to *Hayes v. Medtronic*, 25-CV-2125 (PJS/ECW):

a.   Defendants' motions to dismiss Count XI [ECF Nos. 50, 64] are GRANTED.  Count XI of Hayes's amended complaint [ECF No. 7], against defendant United States Food and Drug Administration, is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

b.   Defendant Medtronic, Inc.'s motion to dismiss Hayes's remaining claims [ECF No. 34] is GRANTED IN PART and DENIED IN PART.

i.   The motion is DENIED with respect to the following claims:

(1)   Count I, insofar as it relates to a parallel claim of manufacturing defect in the device implanted in Hayes in 2024.

(2) Count III, insofar as it relates to a parallel claim of manufacturing defect in the device implanted in Hayes in 2024.

(3) Count VI, insofar as it relates to a parallel claim of manufacturing defect in the device implanted in Hayes in 2024.

ii. The motion is GRANTED with respect to all of Hayes's remaining claims, which are DISMISSED WITH PREJUDICE AND ON THE MERITS.

Dated: July 14, 2026

/s/ Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge